IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

SHIRLEY L. WILLIAMS,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner, Social Security Administration,

Defendant.

Civil No. 10-194-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Shirley L. Williams brings this action pursuant to section 205(g) of the Social Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and for supplemental security income. For the several reasons set forth below, the decision of the Commissioner should be reversed and remanded for further proceedings.

**BACKGROUND**

Plaintiff applied for disability insurance benefits and supplemental security income benefits alleging disability commencing March 27, 2002. Her applications were denied. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on

August 21, 2007. Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. On May 6, 2008, the ALJ issued a decision denying plaintiff's claim, and the Appeals Council denied plaintiff's request for review after considering new evidence submitted by plaintiff.

At the time of the ALJ's decision, plaintiff was fifty-seven years old. Plaintiff has a GED and has some college education. She has relevant past work experience as a companion caregiver, cook, waitress, and manager of an adult foster care home. Plaintiff alleges disability as of March 2, 2002, based upon a combination of impairments including osteoarthritis, intractable gastroesophageal reflux disease, diverticulosis, fecal incontinence, migraine headaches, post-traumatic stress disorder, depression, and degenerative disc disease of the spine. The relevant evidence, medical and non-medical, is discussed below.

**STANDARDS**

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts

in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the

present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 27, 2002. (Tr. 20.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's osteoarthritis, gastroesophageal reflux disease, diverticulitis with abdominal pain, post-traumatic stress disorder, and depression were severe impairments. (Tr. 21-25.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff did not have an impairments or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 25-26.)

In step four, the Commissioner determines whether the claimant can still perform her "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR)

96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In this case, the ALJ found that plaintiff retains the RFC to:

> to sit 8 hours in an 8 hour day, at least one hour at a time. The[n] she should be permitted to move, but need not maintain the second position for any particular period of time. She can stand at least 4 but not more than 5 hours in an 8 hour day, 30 minutes at a time. She should not be required to walk on uneven ground, climb ladders, or frequently climb stairs. Bending, stooping and squatting should be limited to less than one-third of the work day. She can lift between 15 and 20 pounds frequently. She can reach without limitation, but reaching and lifting is limited to 15-20 pounds in weight, no more than occasionally. She must avoid repetition (constant) use of her right hand. Pushing and pulling is limited to 15-20 pounds of force. She must avoid working around dangerous machinery and is limited to a home or office environment where restrooms are likely to be available. The claimant is able to understand, remember, and carry out simple instructions without limitation. She can make simple judgements. Her capacity to understand, remember, and carry out complex instructions is moderately limited but still satisfactory, as is her ability to understand, remember, and carry out complex instructions. Her ability to interact appropriately with the general public, coworkers, and supervisors and her ability to respond appropriately to usual work situations and in a routine work setting is moderately limited but still satisfactory.

(Tr. 26-32.) The ALJ found that plaintiff was able to perform her past relevant work. (Tr. 32.) Accordingly, the inquiry ended at step four.[1] The ALJ found that plaintiff has not been under a disability from March 27, 2002, through the date of the decision. (Tr. 19, 32, 33.)

## DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed because it is not based on substantial evidence. Plaintiff argues that the ALJ and the Appeals Council erred as follows: (1) the ALJ erred by failing to find that some of her impairments are severe impairments; (2) the

[1] In step five of the sequential analysis, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled.

ALJ and the Appeals Council erred by improperly rejecting medical evidence; (3) the ALJ erred by improperly rejecting her complaints and testimony; (4) the ALJ erred by improperly rejecting lay witness statements; and (5) the ALJ erred in her step four finding and it is not supported by substantial evidence. Defendant contends that the ALJ properly evaluated these issues.

The court will address plaintiff's contentions in a different order than set out in the parties' briefs.

**Step Two Findings**

The regulations provide in pertinent part that, "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); see 20 C.F.R. §§ 404.1520(c), 416.920(c). The Ninth Circuit in Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988), noted that a narrow construction has been imposed upon the severity regulation. The Yuckert court determined that the severity regulation must be applied in light of the 1968 regulation which described non-severe impairment as, "'a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities,'" (citing 20 C.F.R. § 404.1520(a) (1968)), and SSR 85-28 which states that, "'an impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work,'" (citing SSR 85-28). Yuckert, 841 F.2d at 306. The ALJ recited this narrow definition in her decision. (Tr. 19.)

//

Plaintiff contends that the ALJ erred by failing to include migraine headaches as a severe impairment at step two. The record indicates that plaintiff sought options for her chronic migraines from Kent R. Walker, D.O., after beginning treatment with him in January 1998. In July 1998, Dr. Walker noted that the migraines improved with medication (Tr. 159). Plaintiff complained of migraines / headaches from time to time and in September 1999 plaintiff was having migraine headaches two to three times each week (Tr. 153). (Tr. 144-82.) Plaintiff reported occasional migraines to Andrew Hyatt, D.O., in November 2001 (Tr. 244) which increased in frequency (Tr. 243). In July 2002, plaintiff was evaluated by Sarah Hsu, MSW, at Umatilla County Mental Health. In the "Education" portion of the assessment, Ms. Hsu commented that plaintiff was "Sensitive to light" and that reading on blue paper was better than on white papers (Tr. 229). (Tr. 206-39.) Plaintiff reported chronic migraine headaches, occurring once a week or more depending on her stress level, to Stephen R. Condon, Ph.D., during a psychological evaluation in June 2004; in relevant part, Dr. Condon diagnosed Axis III "General Medical Conditions: History of spinal meningitis, rheumatic fever, chronic migraine headaches, acid reflux symptoms, diverticulitus [sic]" (Tr. 320-27). Joseph H. Diehl, M.D., noted in a January 2005 consultative comprehensive internist examination report that, on physical examination of eyes, plaintiff exhibited "some slight photophobia" (Tr. 346). (Tr. 344-50.) At the August 2007 administrative hearing, plaintiff testified that Voc Rehab did testing and found there were no jobs she could do because of all of her limitations together, including headaches (Tr. 596). She also testified that, although she wears glasses, "If I read, after about a half an hour, I can't see. Everything gets real blurry" (Tr. 597.) Plaintiff testified that she has migraine headaches "Every other day or so," which sometimes last two or three days (Tr. 600). She

further testified that she is sensitive to light. She responded "Yes," to the question, "Do you have kind of problems with nausea?" (Tr. 600). She used a computer on occasion to write reports for her schoolwork; she had a little trouble because when she looks at a computer, "it blinds me," and it will bring on a migraine, although she was able to do the work if she paced herself (Tr. 605).

The ALJ determined that plaintiff's headaches do not represent more than a slight abnormality or have more than a minimal effect on function and, therefore, found the impairment non-severe after making a thorough review of the record concerning plaintiff's headaches. Plaintiff contends that the ALJ substituted her lay opinion for those of plaintiff's medical source opinions when she stated that "Plaintiff should have had a migraine in response to abuse by her partner and in asserting Plaintiff's migraines were actually a visual problem instead of a neurological one." (Pl. Brief 13.) Plaintiff's contention regarding the ALJ's finding related to stress and headaches is a bit of an overstatement. In setting out the medical record relating to plaintiff's headaches, the ALJ stated that, in June of 2004, plaintiff reported to Dr. Condon her migraine headaches occurred depending on her stress level. The ALJ stated that, despite plaintiff's complaints of recurrent headaches, plaintiff did not describe a limitation in function. She noted that plaintiff admitted drinking alcoholic beverages, she enjoyed close work requiring fine visual acuity, and she described an abusive relationship and familial stress, all of which could trigger migraine headaches, but plaintiff did not describe loss of function as a result of the headaches. The ALJ found that, while plaintiff describes serious stress, including verbal and physical abuse, she does not describe headaches associated with a particular event, only as a general response. This is a fair statement of the record.

The ALJ also found that, while plaintiff complained of beading causing headaches, beading is associated with blurred vision, suggesting the problem may be visual rather than neurological. Plaintiff stated in March 2005 on an agency function report that her reading and beading was limited to 30 minutes to 1 hour because "vision blurs and I get a migraine" (Tr. 131) and, at the August 2007 hearing, plaintiff testified that after reading for one-half hour she can't see because everything gets blurry. The ALJ's determination is in the context of the entire record which is clear that plaintiff has a history of migraine headaches but, on and after her alleged onset of disability date of March 2002, headaches are mentioned in medical reports but not described and no limitations are associated with them. Throughout her discussion of the evidence relating to plaintiff's complaint of migraine headaches, the ALJ noted that plaintiff does not describe limitations and none are stated in the record associated with headaches. The reasons given by the ALJ in not finding plaintiff's headaches to be a severe impairment is a fair and rational interpretation of the medical evidence. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff also contends that the ALJ erred by failing to include fecal incontinence as a severe impairment at step two. The record indicates that plaintiff has reported to medical providers and evaluators and has been treated for diarrhea since at least January 1998. These providers have noted "frequent," "chronic," and "recurrent" diarrhea: Dr. Walker in January 1998 and May 1999 (Tr. 155, 160, 161); Dr. Hyatt in May 2001 and July 2002 (Tr. 242, 244, 245, 246); and Winn H. Gregory, M.D., in June and September 2003 (Tr. 301, 291-319).

Plaintiff was seen for evaluation by James Harri, M.D., in August 2003 for diarrhea, rectal incontinence, upper and lower abdominal pain, questionable history of melena and rectal bleeding; she underwent upper endoscopy and colonoscopy (Tr. 255, 258). Diarrhea was noted in Dr. Gregory's records in September 2003 (Tr. 298). Heidi Dirkse-Graw, M.S., CRC, noted in her September 2004 report that, during the vocational evaluation, she observed that plaintiff had to use the bathroom frequently (Tr. 330, 328-41). Dr. Diehl opined in his January 2005 evaluation of plaintiff may have difficulty with work activities where access to a restroom may be limited, based upon her subjective complaints of frequent episodes of abdominal pain and diarrhea and on the objective findings of generalized tenderness over the abdomen including the left lower quadrant area (Tr. 348). Plaintiff stated in an agency function report in March 2005 in response to the question, "What were you able to do before your illnesses, injuries, or conditions that you can't do now?" that she could not "go places without fear of needing a bathroom, I never had to take extra cloths [sic] along in case of accidents" (Tr. 128). At the August 2007 hearing, plaintiff testified in response to her attorney's questions that she would need to use a bathroom five to fifteen times a day for three minutes to thirty minutes each time; she had fecal incontinence sometimes once a day and sometimes more, and sometimes it was bad enough that she has to change clothes; she had the issue of fecal incontinence while she was in school which caused her to miss time from school (Tr. 599-600, 601, 602).

The ALJ concluded after a thorough review of the record relating to fecal incontinence that it lasted for less than 12 continuous months and did not result in a significant limitation on plaintiff's capacity to function for 12 continuous months. Plaintiff contends that the ALJ's

findings that her impairment was not severe because no one complained about fecal odor or noted any social embarrassment as a result of fecal incontinence are improper.

Throughout her recitation of the record on the issue of whether fecal incontinence constituted a severe impairment, the ALJ stated that plaintiff's medical providers and evaluators did not mention a fecal odor. She also stated that there was no indication of social embarrassment on plaintiff's part related to fecal incontinence. The court agrees with plaintiff that these findings are not sufficient to support the ALJ's conclusion that plaintiff's fecal incontinence was not a severe impairment. The record shows plaintiff's recurring and frequent diarrhea consistently over the years with testing related to the issue. The fact that no mention was made of a fecal odor does not mean that none was detected, nor does it necessarily undermine plaintiff's complaints of frequent diarrhea.

However, although fecal incontinence was not included as a severe impairment, the ALJ included diverticulitis with abdominal pain to be a severe impairment at step two, and included in plaintiff's RFC the limitation that a restroom be available. Accordingly, the court finds that the failure by the ALJ to include fecal incontinence as a severe impairment at step two was harmless. See Burch, 400 F.3d at 679.

**Plaintiff's Testimony**

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce some degree of the symptoms alleged by her. There is no evidence of malingering in the record.

In addition to the conditions set out above, plaintiff testified at the administrative hearing that she has problems with her back and she has memory problems. She testified that what kept her from going back to work was: "My back, memory, headaches, trying to – and having to go to the bathroom. Always sick, and always in pain." She also has fear of people and she cries too much. (Tr. 598.) She testified she has been diagnosed with degenerative disc, which produces discomfort in her low back, which extends to her left leg and some numbness in the right. When plaintiff returned to community college, she had a full day of classes, five to six classes a day. She went full-time for three years and ended because she was running from someone and she was not passing her classes, so she just gave up. She had difficulty with some of her professors; if they were harsh, she would "run," or "fold up" and couldn't concentrate and couldn't do the work. (Tr. 602.) Going over Dr. Diehl's assessment, plaintiff testified that she would have difficulty performing work that required her to stand more than 30 minutes at a time; she could not walk comfortably on uneven ground but would fall down; she would have difficulties performing functions that required bending, stooping, squatting, and lifting. She could not lift 15 to 20 pounds, and believed the doctor told her she could lift 5 pounds; plaintiff doesn't think she could lift that in 2005 when Dr. Diehl gave his opinion. She has problem sitting for long periods of time because her knee locks up, her back hurts, and she has to get up or get down depending on how she's feeling; sometimes sitting makes her leg go numb, as does standing too long. She tolerated the one-and-one-half hour drive in to the hearing "[s]omewhat"; her knee locked up;

when she got out she had a little trouble standing up and her back hurt. Her hip hurts if she rides too long. (Tr. 604, 596-606.)

To the extent the ALJ discounted plaintiff's credibility because she told medical providers and a vocational counselor that her back pain was due to arthritis or herniated discs when the medical record revealed other reasons--lumbar strain and degenerative changes, respectively--the court finds those reasons are not clear and convincing reasons.[2] A patient does not necessarily know the medical cause and/or diagnosis for her back pain. Further, the fact that the record does not include an opinion by a treating physician of functional limitations due to back pain is not a reason to discount plaintiff's credibility. The ALJ gave "great weight" to the opinion of Dr. Diehl, an examining physician, who concluded following examination, that plaintiff had degenerative joint disease of the lumbar spine which would cause certain functional limitations, and found this condition to be a severe impairment. (See Tr. 348, 350.) It is noteworthy that Dr. Diehl considered plaintiff's complaints in addition to his findings, as the ALJ noted in her decision.

The ALJ found that plaintiff's assertion that her sitting was limited to 30 minutes "can" be inconsistent with her statements that she can read for an hour, that she watches television four to five days a week, and that she drives a car. The ALJ also noted that plaintiff attended college classes and looked for a job as a caregiver. As plaintiff points out, watching television and even reading can be done in positions other than sitting. However, the ALJ allowed for this by her use of the word, "can," to describe a possible inconsistency in plaintiff's stated abilities in reading,

---

[2] The ALJ specifically found that plaintiff's allegations of bulging or herniated discs are contradicted by x-rays.

watching television, and driving, and her stated activities. In her RFC, the ALJ found that plaintiff should be permitted to move to another position after sitting for one hour. Contrary to plaintiff's contention that the ALJ discounted her credibility due to her work as a caregiver six years earlier, when she last worked in March 2002, the ALJ noted only that plaintiff looked for work as a caregiver. (Tr. 29; see Tr. 242.) Accordingly, these reasons stated by the ALJ are clear and convincing reasons to discount plaintiff's credibility.

The court agrees with defendant that the ALJ did not discount plaintiff's credibility due to lack of validity testing in the vocational testing or because Dr. Condon found her somatic complaint scale was elevated, as plaintiff argues.

Although not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); Carmickle, 533 F.3d at 1162-63. On this record, the Court finds that the ALJ set out clear and convincing reasons which are supported by substantial evidence for discounting plaintiff's testimony.

**Other Source Evidence**

In reaching a disability determination, the ALJ considers all evidence in the claimant's record, including medical evidence and evidence from other sources. 20 C.F.R. §§ 404.1512, 404.1513, 416.912, 416.913. "Other source" evidence includes evidence from medical sources who are not acceptable medical sources such as, relevant here, licensed clinical social workers.

Other source evidence also includes evidence from non-medical sources such as, relevant here, rehabilitation counselors, who have had contact with the claimant in their professional capacity; and evidence from family members and friends. SSR 06-03p.

> SSR 06-3p identifies factors that apply to the consideration of opinions from both acceptable medical sources and other sources. 71 Fed.Reg. 45593 (Aug. 9, 2006). Those factors include: the degree to which the source presents relevant evidence to support an opinion; how consistent the opinion is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. Id. at *45595. SSR 06-3p further states:
>
>> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an acceptable medical source depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.
>
> Id. at *45596. SSR 06-3p acknowledges that an opinion from acceptable medical source may be outweighed by an other source. Id. Whether this is the case, however, depends on an evaluation based on the factors discussed above. Id.

Press v. Astrue, No. CV 08-1089-AC, 2010 WL 3222103, at *5-*6 (D. Or. Aug. 13, 2010).

The opinion from an "other source" can be discounted by providing specific reasons, germane to the witness. Turner v. Comm'r of Soc. Sec. 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social worker); Purvis v. Comm'r of Soc. Sec. Admin., 57 F. Supp.2d 1088, 1092 (D. Or. 1999).

**Dirkse-Graw Opinion**

Plaintiff was referred by Vocational Rehabilitation Services for a comprehensive vocational evaluation. Rehabilitation counselor, Heidi Dirkse-Graw, M.S. CRC, conducted the evaluation in September 2004. Plaintiff described her medical and physical history and current functioning; and she completed a self-assessment. Ms. Dirkse-Graw conducted various vocational testing. Test results of attention, concentration, and managing impulsivity showed

problems sustaining attention and concentration which impacted plaintiff's ability to learn and remember, and may impact her ability to sustain goal-directed activity. Plaintiff's vocational profile in the strength category indicated work within the sedentary range as "most suitable," although Ms. Dirkse-Graw further stated that it is "questionable" whether plaintiff can work a full 8 hours per day. (Tr. 339.) Plaintiff's predicted vocational level / impact of functioning on ability to work as to the emotional-behavioral factor indicated workplace issues impacting reliability, on-task behavior and interpersonal communication requiring significant intervention; the motor factor indicated significant issues with gross motor functioning in upper and lower body which may impact plaintiff's ability to work an 8 hour day and limits plaintiff to sedentary range; and the coping/adaptive behavior factor indicated mild impairment. (Tr. 328-41.)

In discussing plaintiff's complaint of a back impairment, the ALJ referenced Ms. Dirkse-Graw's vocational evaluation, in particular testing of neuromuscular development which revealed deficits. The ALJ noted that the record did not reveal the conditions under which testing took place, the duration instructions to plaintiff as to how to proceed, validity testing, or other means by which to determine the validity of results. (Tr. 28.) In discussing plaintiff's mental and psychological condition, the ALJ also noted that Ms. Dirkse-Graw's evaluation was "apparently performed without the benefit of Dr. Condon's report" and, as a result, Ms. Dirkse-Graw appeared to have given plaintiff's complaints greater credibility than appropriate. (Tr. 31.)

Stephen R. Condon, Ph.D., conducted a psychological evaluation of plaintiff in June 2004 at the request of Vocational Rehabilitation Services. Dr. Condon administered intelligence,

achievement, and personality tests.[3] In pertinent part, Dr. Condon noted on clinical scales, most scales on the Personality Assessment Inventory were within normal limits, but there was an elevation on the somatic complaints scale, "suggesting emphasis on health concerns, possibility of conversion of psychological stress to physical complaints and somatization, which might involve symptoms such as headaches, pain or gastrointestinal problems, consistent with what [plaintiff] reported in the interview." Plaintiff seemed to have a mild degree physiological symptoms of depression and she endorsed items in the area of traumatic stressors. The treatment consideration scales indicated a mild level of psychological dysfunction. (Tr. 325.) In his summary and recommendation, Dr. Condon stated plaintiff has had various medical problems and exacerbation of physical symptoms appears to have been stress related. Testing revealed, in pertinent part, some mild neuropsychological problems or symptoms associated with mood problems or anxiety symptoms. As to plaintiff's relationship with her partner, he suggested counseling, and stated, "Certainly it would be appropriate to support her in returning to school, finding a job, or work experience, and in helping her to become more independent," stating plaintiff possibly remains in a dysfunctional relationship because she doesn't feel she can support herself. (Tr. 326.) He opined plaintiff needs medical care for her various physical problems. (Tr. 320-27.)

A review of Ms. Dirkse-Graw report shows that she did not show any validity testing. Although plaintiff argues in reply that Ms. Dirkse-Graw, as a trained vocational evaluator, is capable of discerning whether a patient is making an effort during testing, Ms. Dirkse-Graw

---

[3] Dr. Condon stated, "Testing conditions and client participation were adequate for test validity." (Tr. 324.)

made no statement one way or the other in this regard. She made no remark as to the validity of testing. Cf. Higgins v. Astrue, Civil No. 10-193-KI, 2011 WL 2135472, at *7-*8 (D. Or. May 31, 2011) (challenged testing included statement claimant participated fully and demonstrated overexertion on two of twenty-one tasks).

The court has found that the ALJ properly discounted plaintiff's credibility and, therefore, the ALJ did not err in discounting Ms. Dirkse-Graw's opinion based on plaintiff's discounted credibility. See id. at *8 ("Had the ALJ properly found Higgins not credible, the ALJ could have rejected [the physical therapist's] opinion to the extent that she relied upon Higgins's volitional efforts.").

On this record, the court finds that the ALJ set out reasons to explain the weight given to Ms. Dirkse-Graw's opinion to allow review. The ALJ's reasons are germane to Dirkse-Graw and supported by the record.

**Norvell Opinion**

Plaintiff saw Michael Norvell, LCSW, LMHC, for counseling upon referred by Vocational Rehabilitation Services. Mr. Norvell completed a progress report in November 2004, in which he stated he had seen plaintiff for ten one-hour sessions beginning the end of September with the focus of preparing plaintiff to return to work in some capacity. Mr. Norvell opined, based upon plaintiff's reports and available file information that plaintiff should be on SSID with a full disability. He stated he saw "no way" for her to return to work even with help from Vocational Rehabilitation. He listed various medical problems found in plaintiff's file and noted her severe and life-long psychological / emotional problems. Mr. Norvell found that, as a result of abuse, plaintiff's predominant psychiatric diagnosis is post traumatic stress disorder with

symptoms. Although plaintiff has a higher than average IQ as reflected in the file, the presence of low level organicity is suggested possibly due to history of abuse, medical problems, or a combination of the two. Mr. Norvell concluded that plaintiff has a "litany" of physical and psychiatric problems and it was his strong opinion that she will never return to even part time employment. He recommended that counseling be discontinued, plaintiff be referred to a county mental health clinic, and that she receive support to complete an application for SSI disability. (Tr. 342-43.)

In her decision, the ALJ discussed Mr. Norvell's opinion at several points. In discussing plaintiff's claim of fecal incontinence, the ALJ noted that Mr. Norvell believed plaintiff could not work considering, among other problems, her daily diarrhea. The ALJ found that, because the record established diarrhea as intermittent, she found Mr. Norvell's opinion to be overstated. (Tr. 24.) When discussing Mr. Norvell's opinion that plaintiff would never return to even part time employment due to her history of abuse and medical problems, the ALJ noted that he did not enumerate specific limitations "but instead apparently relied on the plethora of all complaints, not merely back complaints." The ALJ stated that, as she discussed, not all of plaintiff's complaints were considered entirely credible or given significant weight and, thus, Mr. Norvell's opinion based on these complaints without apparent assessment of their validity could not be given significant weight. (Tr. 28.) The ALJ again referred to Mr. Norvell's opinion that plaintiff could not be employed when discussing plaintiff's vocational evaluations. The ALJ noted his description of a "'litany'" of problems but, as she had discussed elsewhere in her decision, not all of plaintiff's complaints should be taken at face value. (Tr. 31.)

Contrary to plaintiff's contention that the ALJ did not provide a specific reason for dismissing Mr. Norvell's opinion, the ALJ clearly stated that his opinion should be discounted because it was based, at least in part, on plaintiff's subjective complaints, which she had found to be less than credible. The court has upheld the ALJ's credibility determination. A source's reliance on subjective reports found to be not credible is a valid basis for discounting the opinion. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

The court finds that the ALJ gave specific reasons for discounting Mr. Norvell's opinion which are supported by the record and which were germane to him.

**Spiegel Testimony**

An ALJ must consider the observations by non-medical sources such as the testimony of friends and family members regarding how an impairment affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2); SSR 96-7p. ""[T]estimony from lay witnesses who see the claimant every day is of particular value." Smolen, 80 F.3d at 1288 (lay testimony as to plaintiff's pain and fatigue where medical records were sparse and did not provide adequate documentation of these symptoms). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Stout v. Comm'r, Sec. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill, 12 F.3d at 919.

Amy Spiegel completed a third party function report in October 2004 as an "advisor/friend." (Tr. 116.) She stated she spent from once a week to several times a week with

plaintiff to discuss classes, plaintiff's home life, and impacts of disabilities on plaintiff's life. Ms. Spiegel states that plaintiff "is in constant pain" so she does minimal activities, and her IBS and diverticulitis keep her from doing much. Plaintiff makes short trips to see her, to run errands, or get out of the house when her safety is at stake. Plaintiff cooked, cleaned house, and ran errands for her boyfriend, and she took care of four cats. She states that plaintiff's conditions affect her sleep; she can no longer sleep through the night because she has to get up to go to the bathroom and she has nightmares. Plaintiff takes care of her own personal care. She did light cleaning, laundry, and ironing for one-half hour once or twice a week, but yard work and vacuuming were "prohibited by the doctor due to disability." (Tr. 118, 119.) Plaintiff is a "voracious reader" and beads and paints for relaxation, but she has had to drop beading and painting since her disabilities have become more severe. (Tr. 120.) She noted that plaintiff was in an abusive relationship with a man who kept her isolated, but also stated plaintiff was isolated "because her disabilities are fatiguing, make her over-emotional, tie her to a restroom." (Tr. 120.) Plaintiff was limited to lifting 5-15 pounds occasionally; walking one block; standing a few minutes; no stair climbing; sitting one-half hour; no kneeling, bending, squatting; limited reaching; poor memory and concentration, and she rarely completes started tasks. Ms. Spiegel stated that a back brace was prescribed in 1981 for use "PRN for pain," and glasses in 1988. (Tr. 122, 116-124.)

The ALJ gave little weight to Ms. Spiegel's remarks because she found her report motivated by friendship and caring rather than objective evaluation. It is true as plaintiff asserts, that it is the nature of lay witnesses to have personal rather than professional relationship with the claimant. However, plaintiff's argument that the ALJ rejected Ms. Spiegel's statements because

she and plaintiff had known each other for many years and because Ms. Spiegel was a work study coordinator rather than a counselor and the ALJ required her to have counseling expertise in order to comment on plaintiff's limitations is a mischaracterization of the ALJ's decision. The ALJ's stated reason for her determination was based on the sophisticated level of Ms. Spiegel's comments which gave the appearance of knowledge of claimant's problems on a professional level, and her statements as to occurrences nearly 20 years before her acquaintance with plaintiff. She noted that Ms. Spiegel was a work study coordinator and not a counselor. The ALJ's reasoning is supported by the record, see supra. Particularly noteworthy is the tenor of Ms. Spiegel's specific limitations of plaintiff's physical abilities where she specifies lifting limited to "5-15 lbs occasionally," "no stair climbing," "sitting – ½ hour," no kneeling, bending, squatting," "limited reaching." (Tr. 121.) In addition, the ALJ found that Ms. Spiegel's comments were contradicted by the medical evidence, which reasoning is supported by substantial evidence in the record. Lewis, 236 F.3d at 511.

On this record, the Court finds that the ALJ provided reasons germane to Ms. Spiegel for discounting her testimony.

**Step Four Finding and Vocational Expert Testimony**

Plaintiff first contends that, because the hypothetical posed to the vocational expert (VE) by the ALJ did not include all of her limitations, the VE's testimony that she can perform her past relevant work has no evidentiary value. An ALJ may rely on the testimony of a VE that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). A hypothetical which fails to include all of a

claimant's limitations does not constitute substantial evidence to support a finding that the claimant can perform certain jobs. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

In making this argument, plaintiff does not identify what limitations were left out of the ALJ's hypothetical to the VE but refers only to "limitations related to," for example, plaintiff's credible allegations and limitations assessed by her treating and examining practitioners. Plaintiff essentially contends that testimony she argued was improperly discounted should have been included. The court has found that the ALJ properly discounted the challenged testimony and opinion evidence. Without identification of the particular limitation plaintiff claims was omitted from the hypothetical to the VE, on this record, therefore, the court finds the ALJ's hypothetical was properly stated and complete. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Accordingly, the VE's testimony that plaintiff was able to perform certain work is supported by substantial evidence.

Plaintiff also contends that the ALJ identified the job of companion caregiver which is inconsistent with her RFC finding that plaintiff is unable to repetitively use her right hand. Plaintiff argues that the ALJ erroneously equated "repetitive" with "constant." She asserts that "repetitive" logically means more than once so that even occasional use, defined in the DOT as up to 1/3 of the workday, would be repetitive, and the companion caregiver job requires "frequent" handling and fingering.

The definition that the VE considered in deciding what jobs plaintiff could perform is the definition given him by the ALJ. At the hearing, before posing the hypothetical to the VE, the ALJ asked the VE to confine his answers to the factors she stated. In pertinent part, the ALJ stated the following factor: the individual "must avoid repetitive, which I will define as constant, use of her right hand." (Tr. 608.) Considering the factors stated by the ALJ, the VE responded that plaintiff could perform her prior work of companion caregiver. What is important is that the VE identified jobs based upon the definition given him by the ALJ. No error occurred on the ground asserted by plaintiff in the posing of the hypothetical or in identifying of compatible jobs that could be performed.

Plaintiff contends, finally, that, although the ALJ found that she was able to return to her past relevant work as a "companion caregiver," DOT 309.677-010, as identified by the VE, a "light" occupation, "the evidence shows Plaintiff's actual past relevant work was as an 'in Home Caregiver,' [DOT 354.377-014], which is a medium occupation." (Pl. Brief at 23.) She asserts that her vocational questionnaire and testimony establish that her duties, as actually performed, were more consistent with the more strenuous job: "laundry, helping her clients bathe and dress, shopping for groceries, preparing meals, arranging doctor appointments, driving to doctor appointments, supervising medications, and at least on some occasions turning the client in bed." (Pl. Brief at 23 (citing Tr. 109-11, 591-93, 595.) Plaintiff contends that the ALJ erred in finding she was able to return to work as a "companion caregiver" when that occupation consists of only the least demanding aspects of plaintiff's work as in "in home caregiver."

In her work history report, plaintiff stated in relevant part that, in her jobs as caregiver, she washed clothes / lifted laundry two to three times a week; grocery shopped; and turned her patient in bed for about two weeks. (Tr. 108-11.) At the hearing, plaintiff testified in relevant part that she was working as a "live-in like a companion caregiver." (Tr. 590.) When asked by the ALJ what she did as a companion, plaintiff responded: "I just was there for a lady that is mentally handicapped, and I traveled with her. I'd drive her around. . . . But she didn't need me to drive her very often. She was almost self-sufficient. She liked to walk rather than ride. [And] supervise, see that she cleaned things up . . . ." (Tr. 591.) Plaintiff's attorney asked her the following question: "Were you ever required as a caregiver to assist people in and out of bed, to move them, or to perform those kinds of functions?" Plaintiff responded: "There was, with [L.W.], before she passed away, but they hired someone to fill in that spot so I couldn't [sic] have to be moving her." (Tr. 599.) She further testified that hospice came in to help. Plaintiff's attorney asked her:

> So, so basically, if we were going to talk about caregiver, most of these jobs were actually performed in the capacity, rather than the typical caregiver who's lifting people in and out of bed like a CNA would be doing, you were basically functioning as more of a companion? Would that be accurate?

Plaintiff answered: "That's accurate." (Tr. 599.)

Plaintiff's contention is refuted by her own evidence offered at the hearing to the ALJ. It is the claimant's burden to prove that she cannot perform past relevant work. Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001).

The VE first testified that "most" of plaintiff's work as a companion caregiver was performed as a companion, which is classified as light work, DOT 309.677-100. (Tr. 607.) He identified the job of companion in response to the ALJ's hypothetical, see supra, with some

reduction in numbers because of the limitation of standing four to five hours in a workday. He testified that his testimony was consistent with the definitions found in the DOT, except as to the modification identified. Plaintiff's counsel made no objection to the characterization of her work as a caregiver as one of a companion caregiver, identified by DOT number, and he, in fact, endorsed that characterization in his questioning of plaintiff.

The situation here is distinguishable from the cases cited by plaintiff. In those cases, the ALJ or Appeals Council found that the claimant could perform a duty or task of a job identified by the VE as past relevant work, and characterized it as the past relevant work that could be performed. Vertigan, 260 F.3d at 1051-52 (duties as cashier in job as pharmacy clerk); Valencia v. Heckler, 751 F.2d 1082, 1086-87 (9th Cir. 1985) (task of tomato sorting in job as farm worker). Nothing of the sort occurred here. The VE characterized plaintiff's past relevant work as that of companion caregiver, DOT 309.677-010; he identified that job as one she could do based upon the hypothetical posed to him by the ALJ; and the ALJ found that plaintiff could perform her past relevant work as a companion caregiver based upon plaintiff's RFC.

Accordingly, the ALJ's step four finding on the record before her should be upheld.

**New Evidence**

The record includes new evidence which was submitted to the Appeals Council after the ALJ's decision. (Tr. 396-582.) The Appeals Council considered this evidence and determined that the additional evidence did not provide a basis for changing the ALJ's decision, and denied review. (Tr. 5-7, 8.) Plaintiff contends that the Appeals Council did not provide clear and convincing reasons for rejecting Dr. Robinson's report which is reversible error. She argues that,

under the authority of Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993), the record is complete and the matter should be remanded for payment of benefits. Defendant contends that only a "final decision" may be reviewed and this court has no jurisdiction to consider the Appeals Council decision to decline review. Defendant contends that this issue was not litigated in Ramirez and the decision is not binding precedential authority.

Where the Appeals Council has considered new materials submitted to it in denying review, the Ninth Circuit and this district court have determined that the entire administrative record, including the additional material submitted to the Appeals Council, must be considered in reviewing the Commissioner's finding of not disabled. Id.; Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."); Durham v. Apfel, No. Civ. 98-1422-ST, 1999 WL 778243, at *11-*12 (D. Or. Sep. 22, 1999) (considering the entire record including the new evidence, citing Ramirez); Dain v. Astrue, Civil No. 10-6104-ST, 2011 WL 2490639, at *3 (D. Or. May 23, 2011) ("A court's review of the administrative record explicitly includes review of additional evidence accepted into the record by the Appeals Council."), adopted by Order, 2011 WL 2472800 (D. Or. June 21, 2011); see 20 C.F.R. § 404.970(b) ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.").

X-rays on February 12, 2008, of plaintiff's cervical spine showed degenerative arthritic findings, "appear moderate," at C5-C6 and C6-C7 and mild at C3-C4; lumbar spine x-rays

showed mild multilevel degenerative arthritic findings and spondylolisthesis at L4-L5. (Tr. 487-88.)

Plaintiff saw Terri Robinson, M.D., for examination on February 23, 2008. Plaintiff's chief complaints were low back pain, Crohn's disease, right shoulder pain, migraines, and post-traumatic stress disorder. She reported she has migraine headaches daily. On physical examination, Dr. Robinson found decreased range of motion in plaintiff's back; straight leg raising was positive bilaterally; and she had swelling of the DIP joints[4] of both hands. Neurological examination showed 4/5 strength in bilateral upper and lower extremities and full grip strength; and decreased sensation at the entire lower left extremity. Dr. Robinson's diagnoses were: chronic low back pain, likely degenerative; Crohn's disease; right shoulder pain, possibly internal derangement; posttraumatic stress disorder; and multifocal degenerative joint disease. (Tr. 397-401.) Dr. Robinson assessed limitations and completed a physical RFC report. She opined that plaintiff can stand and walk about 2 hours out of an 8-hour day, with breaks; she can sit for six hours in an 8-hour day, with breaks; she can lift and/or carry 10 pounds occasionally and frequently[5]; push and/or pull is limited in the upper and lower extremities; plaintiff can never climb, kneel, or crouch; she can occasionally balance or crawl; and she has postural limitations on bending and stooping; and plaintiff can frequently reach in all directions including overhead, but she is limited to never handling or fingering. (Tr. 400, 402-03.)

---

[4] DIP joints are the interphalangeal articulations of the hand and of the foot.

[5] In her written report, Dr. Robinson states she can lift and carry 10 pounds frequently or occasionally, and in the RFC form, she checked the box "Less than 10 pounds." (Tr. 400, 402.)

A review of Dr. Robinson's assessment shows that she found exertional limitations which are more limiting than those found by the ALJ as to sitting, standing, and walking, and lifting and/or carrying. Dr. Robinson found additional limitations not found by the ALJ, such as no handling or fingering. These restrictions could affect the step four determination because, if credited, the limitations found by Dr. Robinson are more restrictive than it appears is permitted by the companion caregiver job identified by the vocational expert, which is classified as light work.[6] (Tr. 607, 609.)

The Appeals Council's finding that the additional information did not provide a basis for changing the ALJ's decision is not supported.

**Conclusion**

The court has found that the ALJ's decision is supported based on the record the ALJ had before her. However, because the court has found that Dr. Robinson's functional assessment could, if accepted, change the determination at step four as to whether plaintiff could perform the job of companion caregiver, the Commissioner's decision must be reversed. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)). Generally, remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new

[6] "Light work" means exerting up to 20 pounds of force occasionally and/or up to 10 pounds frequently, and includes walking or standing to a significant degree, even if the weight lifted is negligible. 20 C.F.R. § 404.1567(b). "Sedentary work" means lifting no more than 10 pounds, and walking and standing occasionally. 20 C.F.R. § 404.1567(a).

proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir. 2000).

Here, the court finds it appropriate to remand for further proceedings so that the ALJ may consider and evaluate the additional evidence and either accept some or all of the limitations found by Dr. Robinson and incorporate those limitations into a hypothetical for the vocational expert, or give the requisite reasons for rejecting the opinion. See Harman, 211 F.3d at 1180 ("While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law.").

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and that the matter be remanded for further proceedings, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

//

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by October 17, 2011. If objections are filed, any response to the objections are due by November 3, 2011, see Federal Rules of Civil Procedure 72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 29 day of September 2011.

MARK D. CLARKE
United States Magistrate Judge